UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:06-CV-117-F(2)

EDDIE F. POWELL,                      )
      Plaintiff,                   )
                                      )
   vs.                              )                    ORDER
                                      )
TOWN OF SHARPSBURG,                   )
      Defendant.                   )

This matter is before the court on the parties' cross Motions for Summary Judgment [DE-127; DE-173], the Defendant's "Motion to Reconsider, and Alternatively, Defendant's Objection to the Order of United States Magistrate Judge Gates, Dated November 25, 2008" [DE-222], Plaintiff's Motion to Correct and or Clarify [DE-234], Plaintiff's Motion to Strike [DE-235], Defendant's Motion to Strike [DE-238], and Defendant's Motion to Strike Or, in the Alternative, Motion to Exclude [DE-183].

## I. PROCEDURAL HISTORY

On June 6, 2006, Plaintiff filed a Motion to Proceed *In Forma Pampers* [IFP motion], along with the Complaint, with the Clerk of Court of the Eastern District of North Carolina. *See* Motion to Proceed *In Forma Pauperis* [DE-1]. In an order entered June 8, 2006, United States Magistrate Judge Gates allowed Plaintiff's IFP motion, and directed the Clerk of Court to file the Complaint and Summons prepared by Plaintiff. On June 9, 2006, the Clerk of Court filed Plaintiff's Complaint

Plaintiff filed an Amended Complaint on June 20, 2006, asserting claims against the Town of Sharpsburg (the "Town"), its Mayor, four Town Commissioners, and three Town employees. Plaintiff asserted claims for "Employment Discrimination Race," "Employment Discrimination Harassment/Hostile," "Retaliation," "Wrongful Discharge," and "Defamation." Most of the named

Defendants filed motions to dismiss.

In an order filed on October 24, 2006, the undersigned allowed most of the Defendants' motions to dismiss, except for Plaintiff's claim for race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") against the Town. With regard to that claim, this court noted that the Town argued that Plaintiff failed to plead sufficient facts to support a Title VII racially discriminatory discharge claim. The court observed, however, that the allegations in the Amended Complaint indicated that Plaintiff is pursuing a discriminatory discipline claim. The pertinent allegations included:

> A. EMPLOYMENT DICRIMATION[sic] RACE
> 22. Defendant Pittman treated the plaintiff Powell (the only black employee) differently daily from the treatment he accorded to all white employees.
> 23. Defendant Pittman allowed white employees to curse, make mistakes[,] do sloppy work; fail drug screens with no consequences.
> 24. Defendant Pittman scolded, reprimanded, cursed Plaintiff Powell for anything perceived to be wrong with his work.
> 25. Defendant Pittman sometimes scolded, reprimanded, cursed Plaintiff Powell when nothing was wrong.

Amended Compl. [DE-12] at ¶¶ 22-25.

After reviewing the relevant allegations, this court explained:

To establish a discriminatory discipline claim under Title VII, a plaintiff must show: "(1) that he is a member of a class protected by Title VII, (2) that the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class, and (3) that the disciplinary measures enforced against him were more severe than those enforced against other employees." *Cook v. CSX Transp. Co.*, 988 F.2d 507, 511 (4th Cir. 1993). The factual allegations of Plaintiff's Amended Complaint allege that he was black, that he was routinely reprimanded for any perceived deficiencies in his work, and that white employees were not reprimanded. Although Plaintiff will certainly have to come forward with specific evidence supporting his allegations, at the present posture of the case his factual allegations are sufficient to survive a Rule 12(b)(6) motion on his race discrimination claim.

2

October 24, 2006 Order [DE-46] at unnumbered pp. 6-7.

The litigation has since proceeded, but has been punctuated by a series of discovery disputes between the parties. During one of those disputes, Plaintiff sought the production of work orders he allegedly did not perform. The Town indicated in a hearing in front of Judge Gates that the work orders had been destroyed in conformance with its records retention policy. After receiving briefing from the parties, Judge Gates, in an Order filed on November 25, 2008, determined that: (1) the work orders were relevant; (2) the Town knew the work orders were relevant when it destroyed them; (3) the Town willfully, but not in bad faith, destroyed the work orders; and (4) an adverse instruction is warranted in the case. Against this procedural backdrop, the court turns to the facts in this case.

## II. STATEMENT OF FACTS

Plaintiff, an African American male, began employment with the Town on July 7, 2003. Dep. of Powell at pp. 46-47.[1] Eventually, he was assigned to the water and sewer department, and worked under the supervision of William Pittman ("Pittman"), the Supervisor of Public Works for the Town.

The record indicates that Plaintiff initially received favorable reviews, promotions, and consistent increases in pay. Dep. of Powell, at pp. 49-50, 77, 79-80. Plaintiff contends that at some point, he became the confidant of his co-workers, and tried to bring their complaints to the attention of Pittman. Amend. Compl. [DE-12] ¶ 19. He grew frustrated, however, and just three or four months after beginning his employment with the Town, he tendered his resignation to be effective

---

[1] The Town filed portions of Plaintiff's deposition in support of its various motions before the court. However, in accordance with the practice preferences of this court, the Town also provided a full copy of the transcript to the undersigned. Because the undersigned reviewed the entire transcript, not just portions cited by the Town, the Clerk of Court is DIRECTED to file a copy of the full condensed transcript as a part of the record of this case.

3

at the end of two weeks. Dep. of Powell, at pp. 47-48. Plaintiff returned to work before the expiration of the two weeks, however, and continued to receive favorable reviews and pay raises, and eventually was promoted. Dep. of Powell at pp. 49-50.

The next year, in March 2004, Pittman verbally reprimanded Plaintiff for crossing railroad tracks in a Town vehicle when the gates were down, telling him he would "fire [his] black ass if [he] did it again." Dep. of Powell at pp. 12-13. Plaintiff was not written up for this incident, did not receive a decrease in pay, and was neither suspended nor demoted. Dep. of Powell at pp. 15. Later that year, in approximately July 2004, Plaintiff again became unhappy with Pittman and his employment, and tendered a second two-week notice to Becky Maynard, the Town Administrator. Dep. of Powell at pp. 119-20. After tendering his resignation, Plaintiff contends that he and Pittman were involved in an altercation after Pittman attempted to talk to Plaintiff about the resignation. Plaintiff contends that Pittman threw a lightbulb at him and threatened him with a gun. Dep. of Powell at pp. 93-96. Eventually, Pittman was charged with assault, and Plaintiff was charged with communicating threats, for their respective conduct during the altercation. Dep. of Powell at pp. 105-07. Both charges eventually were dropped, apparently despite Plaintiff's objections. Dep. of Powell at pp. 111-12. After speaking with the Mayor of the Town, Powell decided to return to work before the expiration of his two-week notice. Dep. of Powell at p. 123.

At some point after Plaintiff returned to work, Pittman told him that a Town police officer had seen him speeding through town. Dep. of Powell at p. 159. Pittman asked Plaintiff what happened, and Plaintiff told Pittman it was an emergency situation and he had flashers on. Dep. of Powell at pp. 159-60. Plaintiff contends that Pittman told him that was fine, but a few days later Plaintiff received a document from the Town police department indicating he had been driving a

4

Town vehicle 79 m.p.h in a 45 m.p.h. zone. Dep. of Powell at p. 160-61, 167-68. At some later time, a Town police detective observed Plaintiff driving a Town vehicle in a manner he considered reckless. Dep. of Powell at pp. 168-72. Powell disputes the detective's account.

In any event, the Town became dissatisfied with Plaintiff's performance. Eventually, on October 15, 2004, Maynard and Pittman met with Plaintiff to discuss what they perceived to be his poor performance and present him with a "Supervisor's Employee Disciplinary Form" which stated:

> PERFORMANCE AND/OR OTHER DEFICIENCIES DISCUSSED: It has been brought to my attention that you have refused to do work orders and to work as a team with your fellow employees. Also, you have been misusing town vehicles, according to the Police Department and other fellow workers. Also, I have taken notice that your professional work mannerism toward your Supervisor is not what it should be.
>
> CORRECTIVE ACTIONS RECOMMENDED:
> Perform the work that you are asked to do pertaining to your job requirements. Operate town vehicles in a manner that they should be, not carelessly. Communicate with your Supervisor at any given time. Start working as a team member not on the defensive.
>
> TIME LIMITS SET: I request to see a difference in work performance and work relations within 30 days.
>
> COMMENTS: I appreciate your capabilities and I know without a doubt you can be a good worker. Please make an extra effort.

Town Resp. to Pl.'s Mot. for Summ. J. [DE-147], Ex. 3; Dep. of Powell at p. 248. Plaintiff refused to sign the form. Dep. of Powell at p. 215. Plaintiff specifically disputes that he refused to perform work orders.

On October 19, 2004, Plaintiff went to the Town Lot, and cursed at his co-workers, calling them "motherfuckers" because he felt they had turned on him. Dep. of Powell at p. 216-17. That same day, he resigned again, effective November 5, 2003, and asked Maynard to gather the necessary

5

paperwork to transfer his retirement benefits. Dep. of Powell at p. 225. On October 21, 2004, Maynard informed Plaintiff that instead of letting him work until November 5, 2004, the Town considered him separated from employment on October 21, 2004. Dep. of Powell at p. 228-29.

On October 25, 2004, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging race discrimination and retaliation. Town Resp. to Pl.'s Mot. for Summ. J. [DE-147], Ex. 2 ("EEOC Charge"). In the Charge, Plaintiff stated that "[p]rior to July 30, 2004, I received no disciplinary actions or complaint about my work." *Id.*

## III. MOTIONS TO STRIKE

Both parties have filed motions to strike, which the court will review seriatim.

### A. The Town's First Motion to Strike

The Town filed the first Motion to Strike, or in the Alternative, Motion to Exclude [DE-183], seeking to strike, or exclude from the court's consideration, a variety of statements within Plaintiff's Response [DE-181], portions of an Employment Security Commission ("ESC") hearing, documents Plaintiff failed to produce in discovery, and copies of portions of news articles.

#### 1. Statements within Response

With regard to the various statements within Plaintiff's Response [DE-181], the court declines to strike the statements. The court is capable of discerning what *evidence* proffered by Plaintiff is relevant to his sole remaining claim of disparate discipline.

#### 2. ESC Hearing

The Motion to Strike [DE-183], however is ALLOWED insomuch as it applies to *excluding* portions of an ESC hearing proffered by Plaintiff from the court's consideration of the cross-motions

6

for summary judgment.[2] The Town asks that the court exclude any reference to testimony from Plaintiff's ESC hearing pursuant to North Carolina General Statute Section 96-4(t)(5), which provides:

> All letters, reports, communication, or any other matters, either oral or written, including testimony at any hearing, from the employer or employee to each other or the Commission or any of its agents, representatives, or employees, which letters, reports, or other communication shall have been written, sent, delivered, or made in connection with the requirements of the administration of this Chapter, shall be absolutely privileged communication in any civil or criminal proceedings . . . .

N.C. Gen. Stat. § 96-4(t)(5).

State statutory privileges, like Section 96-4(t)(5), do not automatically apply to federal claims in federal court. *Hartsell v. Duplex Prods., Inc.*, 895 F.Supp. 100, 102 (W.D.N.C. 1995). Here, Plaintiff's Title VII claim for disparate discipline is governed by federal law. Rule 501 of the Federal Rules of Evidence governs evidentiary privileges in federal question cases, and provides, in relevant part:

> Except as otherwise required by the Constitution of the United States or provided by an Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they might be interpreted by the courts of the United States in the light of reason and experience.

FED. R. EVID. 501. Federal law does not recognize a privilege for testimony from a state

---

[2] The court discerns that it is more appropriate to evaluate the Town's Motion to Strike under Rule 56(e) of the Federal Rules of Civil Procedure, rather than Rule 12(f). *See Monroe v. Board of Educ. of Town of Wolcott, Connecticut*, 65 F.R.D. 641, 645 (D. Conn. 1975)(declining to strike an exhibit to a response to a motion for summary judgment under Rule 12(f), but accepting the motion to strike "as an invitation . . . to consider whether" the challenged material is admissible). *See also Smith v. Computer Task Group, Inc.*, 568 F.Supp.2d 603, 610 (M.D.N.C. 2008)(treating a motion to strike as an objection to the admissibility of the challenged evidence under Rule 56(e)).

7

unemployment benefits hearing. *See Hartsell*, 895 F.Supp. at 102. Where, as here, no controlling federal law exists, a federal court may give effect to a privilege recognized under state law, but only after conducting a balancing test which weighs the historical and policy considerations underlying the state privilege against any harm to the federal interest. *United States v. Cartledge*, 928 F.2d 93, 96 (4th Cir. 1991).

In *Hartsell*, the District Court for the Western District of North Carolina engaged in such a balancing test where the plaintiff, who alleged sexual harassment by her employer under Title VII, sought to include testimony from an ESC hearing in opposition to her employer's motion for summary judgment. 895 F.Supp.2d at 102-03. The court recognized that the "ESC Privilege encourages full disclosure from claimants and employers at ESC hearings, and it prevents parties from conducting free discovery before litigation." *Id.* at 102. After weighing this state interest against the federal interest in adjudicating Title VII claims, the court concluded that the federal interests did not outweigh the state interest. Specifically, the court reasoned that the ESC testimony had limited probative value where the parties have the opportunity to engage in extensive discovery in the federal action. *Id.* The court also noted that a "Title VII claim heard in federal court commands a discrete adjudicative sphere from a state administrative proceeding" and that "ESC hearings do not investigate Title VII allegations, and ESC participants do not expect their testimony to appear later in a subsequent federal Title VII proceeding." *Id.* at 103.

This court finds the reasoning of the *Hartsell* court persuasive and applicable to the instant case. Plaintiff had the opportunity to engage in extensive discovery, and could have deposed the witnesses whose ESC testimony he seeks to introduce. Moreover, this court agrees that plaintiffs should not be allowed to overstep the demarcation between ESC hearings and federal civil trials.

8

*See id.* at 103. For these reasons, the court concludes that any reference to ESC testimony should be excluded.

### 3. NAACP and EEOC documentation

The Town also argues that Plaintiff's Charge of Discrimination with the NAACP and various EEOC documents attached to his Response should be excluded because Plaintiff failed to produce them during discovery. Since making this motion, however, Magistrate Judge Gates has ruled upon several of the parties' discovery motions, and it is unclear whether the Town still has not received those documents. Because of the uncertainty of the record, the court declines to exclude these documents from its consideration of the parties' motions for summary judgment.

### 4. Newspaper articles

Finally, the Town argues that newspaper articles Plaintiff attaches as Exhibits Number 2 and 8 to his response are inadmissible hearsay. Hearsay, "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted" is inadmissible under the Federal Rules of Evidence unless it falls under one of the "hearsay exceptions." FED. R. EVID. 801; 802. In the Fourth Circuit, because hearsay evidence is inadmissible at trial, it cannot be considered on a motion for summary judgment. *Md. Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1251 (4th Cir. 1991).

To the extent that the newspaper articles are proffered " 'to prove the factual matters asserted therein,' " they are inadmissible hearsay. *Gantt v. Whitaker*, 57 Fed. Appx. 141, 150 (4th Cir. 2003)(quoting *United States v. ReBrook*, 58 F.2d 961, 968 (4th Cir. 1985)). The court cannot identify an applicable hearsay exception which would apply to the newspaper articles, and therefore, the court excludes them from its consideration of the cross-motions for summary judgment.

9

**B. Plaintiff's Motion to Strike**

Plaintiff filed a motion to strike [DE-235] asking that twelve documents he submitted in filings be stricken from the record because they were marked confidential. However, Plaintiff also filed all of the referenced documents, plus several more, as a "sealed exhibit" in the record. *See* Sealed Exhibit [DE-237]. This "Sealed Exhibit" entry immediately follows a "Memorandum" [DE-236] filed by Plaintiff on February 23, 2009, which appears to be identical to a memorandum filed by Plaintiff on February 13, 2009. Consequently, it appears to the court that Plaintiff is asking that the unsealed copies of the specified documents be stricken, and that the court allow him to file these documents under seal.

Plaintiff's motion [DE-235] is ALLOWED, and the following documents hereby are STRICKEN from the record: DE-233-4; DE-233-5; DE-233-7, and DE-233-8. Moreover, the court finds that the sealing of the identified confidential documents is appropriate under *Stone v. Univ. of Maryland Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988), and the entry at DE-237 will remain SEALED.

**C. The Town's Second Motion to Strike**

In the second Motion to Strike [DE-238], the Town seeks to exclude the affidavit of Jacquelin Jones, the affidavit of Joe Strachan, the affidavit of Andre Knight, and the affidavit of Edna Mount. Because the affidavits have no relevance to Plaintiff's claim for discriminatory discipline,[3] the Motion to Strike [DE-238], which this court construes as a motion to exclude, is

---

[3] Only the affidavit of Jacquelin Jones could be construed as discussing discipline. However, it is apparent from the record that Jones does not have the same supervisor that Plaintiff had while employed by the Town. "If different decision-makers are involved, employees are generally not similarly situated." *Forrest v. Transit Mgmt. of Charlotte, Inc.*, 254 Fed. Appx. 255, 257 (4th Cir. 2007)(citing *Plair v. E.J. Brach &Sons, Inc.*, 105 F.3d 343, 350 n.3

10

ALLOWED.

## IV. MOTION TO RECONSIDER

The Town also objects to Magistrate Judge Gate's November 25, 2008 Order [DE-221], wherein he found that work orders destroyed by the Town were relevant and that sanctions, in the form of an adverse inference instruction to the jury, were warranted.

First, the court must determine what standard of review is applicable. The Town contends that the court must review this order pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, which provides that for dispositive pretrial motions, the magistrate judge must make a recommendation, which is subject to de novo review by the district judge. FED. R. CIV. P. 72(b); accord 28 U.S.C. § 636(b)(1)(B). With respect to nondispositive pretrial motions, however, magistrate judges may issue final orders. *See* 28 U.S.C. § 636(b)(1)(A); FED. R. CIV. P. 72(a). If a party objects to an nondispostive order entered by a magistrate judge, the party may file objections thereto within ten days of service of the magistrate judge's order. *See* FED. R. CIV. P. 72(a). Orders of a magistrate judge regarding nondispositive issues shall be modified or set aside only when found to be clearly erroneous or contrary to law. FED. R. CIV. P. 72(a).

Pretrial discovery motions generally are nondispositive in nature. *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990). If a party moves for discovery sanctions, the sanction chosen by the magistrate judge, rather than the sanction sought by the party, determines whether the magistrate judge's decision is dispositive. 12 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 3068.2 (2008)("The critical issue here is what sanction the magistrate judge actually imposes, rather than the one requested by

_____

(7th Cir. 1997); *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997)).

11

the party seeking sanctions."). Accordingly, even if a litigant asks for a dispositive sanction, but the magistrate judge declines to impose it, the magistrate judge's decision is governed by Rule 72(a). *See Gomez v. Martin Marietta Corp* , 50 F.3d 1511, 1519-20 (10th Cir. 1995); *Segal v. L.C. Hohne Contractors, Inc.*, 303 F.Supp.2d 790, 798 (S.D.W.Va. 2004). In this case, the sanction imposed by Magistrate Judge Gates–an adverse inference instruction–is not dispositive of any claim. *See Lyondell-Citgo Refining, LP v. Petroleos de Venezuela, S.A.*, No. 02 Civ. 0795(CBM), 2005 WL 1026461, at * 3 (S.D.N.Y. May 2, 2005). Consequently, Judge Gates' November 25, 2008 Order is governed by Rule 72(a), and this court will only modify or set aside his decision if it is clearly erroneous or contrary to law.

After reviewing the Town's motion, as well as the Judge Gate's November 25, 208 Order, and the underlying record, the court concludes that the Order was not clearly erroneous or contrary to law. Despite the Town's arguments to the contrary, the work orders are relevant. The Town argues now, as it did before Judge Gates, that the work orders would not show that Plaintiff did not refuse to complete them. Necessarily, however, the work orders would show if Plaintiff completed them by virtue of his initials in the "Completed by" space. Judge Gates' finding that the work orders are relevant is therefore not clearly erroneous. Moreover, even if Plaintiff has objections to what the Town proffered as an example "work order," the fact remains that whatever work orders were used by the sanitation and sewer department have not been produced and, from the representations of the Town, have been destroyed.

Because Judge Gates' November 25, 2008, Order was neither clearly erroneous nor contrary to law, the Town's Objection [DE-222] is DENIED.

12

## V. MOTIONS TO DISMISS/SUMMARY JUDGMENT

Plaintiff moves for summary judgment [DE-127] and the Town moves to dismiss the Amended Complaint pursuant to Rule 12(b)(1) or, in the alternative, for summary judgment [DE-173].

### A. Motion to Dismiss

The Town contends that Plaintiff's remaining claim for disparate discipline must be dismissed pursuant to Rule 12(b)(1) for failure to exhaust administrative remedies.[4] A person who complains of a violation of Title VII is required to file an administrative charge with the EEOC and allow the agency an opportunity to act on the charge. *See Davis v. North Carolina Dep't of Corr.*, 48 F.3d 134, 137 (4th Cir. 1995). The aggrieved party may file suit in federal district court only after the EEOC has notified the party of its decision to dismiss or its inability to bring a civil action within the requisite time period. *See id.* at 137-38.

Even after an aggrieved party has exhausted the administrative remedies, the allegations contained in the EEOC charge "generally operate to limit the scope of any subsequent judicial complaint." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962-63 (4th Cir. 1996). "If 'the claims raised under Title VII exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred.' " *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005)(quoting *Dennis v. County of Fairfax*, 55 F.3d 151,

---

[4] It is not clear from Fourth Circuit precedent that the failure to exhaust administrative remedies is a *jurisdictional bar* to suit. *See Sloop v. Mem. Mission Hosp.*, 198 F.3d 147, 148 (4th Cir. 1999)(noting that the requirement that a Title VII claimant raise his claim before the EEOC has been "variously referred to as a jurisdictional prerequisite to adjudication in the federal courts, a procedural prerequisite to bringing suit, and a requirement that a claimant exhaust administrative remedies").

13

156 (4th Cir. 1995)). Consequently, the Fourth Circuit has "held that the allegation of a discrete act or acts in an administrative charge is insufficient when the plaintiff subsequently alleges a broader pattern of misconduct." *Id.* at 509. Similarly, "if the factual foundation in the administrative charge is too vague to support a claim that is later presented in subsequent litigation, that claim will also be procedurally barred." *Id.* Administrative charges, however, are typically not drafted by persons educated in the law, and thus courts are to construe them liberally. *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 460 (4th Cir. 1988).

In the instant case, on or about October 25, 2004, Plaintiff filed a charge of discrimination with the EEOC, alleging he was subject to discrimination based on race and retaliation. In the section detailing the particulars of the charge, Plaintiff stated, in part, that:

I. During the period from June 2003 until October 2004, I was harassed by my supervisor, Mr. William Pittman, Caucasian. Finally, on October 21, 2004, I was discharged from a water services worker position. On July 30, 2004, I offered to voluntarily resign because of this harassment and in, early August 2004, I filed an assault charge against Mr. William Pittman, [sic] I had been employed by the above named employer since June 2003.

II. No reason was given to me for the harassment directed toward me. I was told by the town administrator, Ms. Becky Maynard, Caucasian, that I was discharged because of my conduct over the past several weeks, the relationship I had with fellow workers and rejection to perform work orders.

Prior to July 30, 2004, I received no disciplinary actions or complaint about my work. My supervisor, Mr. William Pittman, Caucasian, was suspended for 3 days for assaulting me, however, he was not discharged. I did not reject or refuse to perform work orders assigned to me. I was the only Black person employed by the above named employer.

The Town's Resp. to Pl.'s Mot. for Summ. J [DE-147], Ex. 2.

In the Amended Complaint, Plaintiff included the following allegations which led the court to conclude that he was pursuing a discriminatory discipline claim:

14

A. EMPLOYMENT DICRIMATION[sic] RACE

22. Defendant Pittman treated the plaintiff Powell (the only black employee) differently daily from the treatment he accorded to all white employees.

23. Defendant Pittman allowed white employees to curse, make mistakes[,], do sloppy work; fail drug screens with no consequences.

24. Defendant Pittman scolded, reprimanded, cursed Plaintiff Powell for anything to be wrong with his work.

25. Defendant sometimes scolded, reprimanded, cursed Plaintiff Powell when nothing was wrong.

Amended Compl. [DE-12] ¶¶ 22-25. Construing Plaintiff's original EEOC charge with " 'utmost liberality,' "*Alvarado v. Board of Trustees*, 848 F.2d 457, 460 (4th Cir.1988) (citing *Kaplan v. Int'l Alliance of Theatrical & Stage Employees*, 525 F.2d 1354, 1359 (9th Cir.1975)), this court nevertheless finds that Plaintiff failed to allege facts in the charge that raise a claim for discriminatory discipline. First, the court notes that the allegations in the charge necessarily exclude any acts of discipline that occurred prior to July 30, 2004. Plaintiff plainly states that prior to July 30, 2004, he was not subject to any disciplinary measures or reprimands. The Town's Resp. to Pl.'s Mot. for Summ. J [DE-147], Ex. 2 ("Prior to July 30, 2004, I received no disciplinary actions or complaint about my work."). Second, Plaintiff also does not allege any acts of discipline that occurred after July 30, 2004. He references only his alleged discharge from employment.

Moreover, the court cannot conclude that a reasonable investigation of his EEOC charge would have uncovered his now-asserted claim of discriminatory discipline. To be sure, whether Plaintiff was disciplined at all leading up to his alleged discharge would be a part of the investigation, considering that he contested the basis for his termination in the charge itself. The court would be hard-pressed, however, to say that a reasonable investigation would also include any information-gathering on the discipline received by other employees. *Cf. Chacko*, 429 F.3d at 512 (concluding that evidence of co-worker name calling would not be uncovered during a reasonable

15

investigation where the charge included only allegations of specific supervisor conduct and that allegations could only be considered "reasonably related . . . if specific factual allegations couched in broad terms like 'harassment' or 'hostile treatment' could invariably encompass a limitless number of other factual worlds"). Consequently, the court concludes that Plaintiff failed to exhaust his administrative remedies as to his claim for disparate discipline under Title VII, and the claim must be DISMISSED.

## B. Motion for Summary Judgment

Even if this court could conclude that Plaintiff exhausted his administrative remedies with respect to his claim for disparate discipline, the Town would still be entitled to summary judgment.

### 1. Standard of Review

Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden initially of coming forward and demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When making the summary judgment determination, the facts and all reasonable inferences must be viewed in the light most favorable to the non-movant. *Liberty Lobby*, 477 U.S. at 255. Once the moving party has met its burden, the non-moving party then must come forward and demonstrate that such a fact issue does indeed exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish any one of the essential elements of the party's claim on which he will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322-23.

### 2. Discriminatory Discipline

16

The sole remaining claim in this case, despite Plaintiff's suggestions to the contrary, is for disparate discipline in violation of Title VII. *See* October 24, 2006 Order [DE-46]. Title VII makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . race . . . ." 42 U.S.C. § 2000e-2(a)(1). " '[T]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination.' " *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 286 (4th Cir. 2004)(quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 503 U.S. 133 (2000)). Generally, a Title VII plaintiff may establish a claim for intentional discrimination via the judicially-created burden-shifting pretext framework, as espoused in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the familiar *McDonnell Douglas* scheme, Plaintiff first must establish a prima facie case of discrimination. *See id.*, 411 U.S. at 802 . If Plaintiff establishes a prima facie case of discrimination, the burden shifts to the Town to produce a legitimate, nondiscriminatory reason for the adverse employment action. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). If the Town meets its burden of production, the presumption of discrimination created by the prima facie case disappears from the case, and Plaintiff then must prove that the Town's articulated reason was a pretext for unlawful discrimination. *See id.* at 253-55. In light of *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133 (2000), a plaintiff is no longer required to show pretext *plus* some additional evidence of discrimination. *Id.* at 148; *see Rowe v. Marley Co.*, 233 F.3d 825, 830 (4th Cir. 2000). Rather, the ultimate fact of discrimination may, in appropriate cases, be inferred from the falsity of a defendant's proffered explanation. *Rowe v. Marley Co.*, 233 F.3d 825, 830 (4th Cir. 2000). Additionally, under *Desert Palace v. Costa*, 539 U.S. 90 (2003),

17

Plaintiff may offer evidence to support a finding that the Town's reason, "while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristics." *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).

In the context of disciplinary discipline, an employee may establish a prima facie case of discrimination by showing that (1) he is a member of a protected class; (2) the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class; and (3) he suffered more severe discipline for his misconduct as compared to those employees outside the protected class. *Taylor v. Virginia Union Univ.*, 193 F.3d 219, 234 (4th Cir. 1999)(en banc), *abrogated on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). Although "precise equivalence" between employees' actions need not be shown, the relevant conduct still must be of "comparable seriousness" given the relative culpability of the comparable employees and the harm caused. *Moore*, 754 F.2d at 1107 (citing *McDonald v. Santa Fe Transp. Co.*, 427 U.S. 273, 283 n.11 (1976)).

The only disciplinary action Plaintiff can point to that he received within 180 days of his filing of the EEOC charge[5] is the written "Supervisor's Employee Disciplinary Form" he received on October 15, 2004. Plaintiff received this written warning for his alleged failure to perform work orders, his failure to work as a team with his co-workers, his alleged misuse of town vehicles, and his interaction with his supervisor. Town Resp. to Pl.'s Mot. for Summ. J. [DE-147], Ex. 3. Plaintiff, therefore, must come forward with *evidence* that other employees engaged in comparable

---

[5] To be timely, a charge of discrimination must be filed within 180 days after the alleged discrimination occurred. *See* 42 U.S.C. § 2000e-5(e)(1); *EEOC v. Comm. Office Prod. Co.*, 486 U.S. 107, 110 (1988). Consequently, only discipline that Plaintiff received within 180 days of October 25, 2004, the day he filed the EEOC charge, are before the court in this case.

18

misconduct and did not receive comparable discipline. This Plaintiff has not done.

Plaintiff asserts that four different white Town employees engaged in misconduct with Town vehicles but either were not "written up" or only received a written warning after numerous incidents. For the first comparator, Plaintiff has proffered evidence showing that the employee's license was revoked in 2002, but he has not proffered evidence showing that this employee worked for the Town while his license was revoked. Moreover, even if this was shown, it is unclear how this would show "misconduct"–there is no evidence the employee lied to the Town about the status of his license. Plaintiff also contends that this same employee "drove recklessly and was reported by police department and citizens alike" and that this employee "not only damage[d] town property he put two children in danger." Suppl. Mem. [DE-236] at p. 1. Plaintiff, however, offers no *evidence* to support this assertion–he states only that he has unnamed witnesses that will verify property damage. *Id.* at pp. 1-2. This blanket statement, of course, is not evidence of misconduct, or evidence that the employee's superior was aware of the misconduct. As to the second comparator, Plaintiff has proffered evidence showing that he received a written warning after his *second* accident in five months. *See* Sealed Exhibits [DE-237], "Confidential Notice." It is unclear, however, how this shows that Plaintiff was subjected to harsher discipline than this white employee. The evidence shows that Plaintiff's supervisor had received at least three complaints about Plaintiff's driving, as well as complaints about other aspects of Plaintiff's work, prior to giving him a written warning.

Nor do the other two comparators help Plaintiff establish a prima facie case. The evidence proffered by Plaintiff shows that the third comparator, a Town police detective, self-reported that he backed his patrol car into an electrical box. *See* Sealed Exhibits [DE-237], "Powell 326." Again, it is unclear how self-reporting an incident is comparable to a supervisor receiving multiple

19

complaints about driving and other work responsibilities. Finally, the fourth comparator proffered by Plaintiff, another police officer, ran off the road during a high-speed pursuit of a suspect, and did not receive a written warning. *See* Sealed Exhibits [DE-237], "Powell 43 & 44." There is no suggestion from the evidence that this was "misconduct." This same employee was *fired* when two years later he was in an accident and tested positive for controlled substances. *See* Sealed Exhibits [DE-237], "Powell 53 & 56".

In sum, Plaintiff has failed to come forward with evidence showing that other Town employees, who were not African-American, engaged in similar misconduct and were subjected to more lenient discipline. Without such evidence, Plaintiff cannot establish a prima facie case, and the Town's motion for summary judgment is ALLOWED.

## VI. CONCLUSION

For the foregoing reasons, the Town's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment [DE-173] is ALLOWED and the Plaintiff's Motion for Summary Judgment [DE-127] is DENIED. The Town's Motion to Reconsider, and Alternatively, Defendant's Objection to the Order of United States Magistrate Judge Gates, Dated November 25, 2008 [DE-22] is DENIED. Plaintiff's Motion to Correct and or Clarify [DE-234] is ALLOWED, as is Plaintiff's Motion to Strike [DE-235], and the following documents hereby are STRICKEN from the record: DE-233-4; DE-233-5; DE-233-7, and DE-233-8. The exhibits at DE-237 shall remain sealed. The Town's Motion to Strike, or in the Alternative, Motion to Exclude [DE-183], is ALLOWED in part, and the court has excluded the portions of an ESC hearing and newspaper articles proffered by Plaintiff. The Town's Motion to Strike [DE-236], which this court construes as a motion to exclude, is ALLOWED. Finally, the Clerk of Court is DIRECTED to file the copy of the full condensed

20

transcript of Plaintiff's deposition as a part of the record of this case, and to close this case.

SO ORDERED.

This the 27 day of March, 2009.

James C. Fox
James C. Fox
Senior United States District Judge

21